

55 SECOND STREET, SUITE 1700, SAN FRANCISCO, CALIFORNIA 94105-3493
TELEPHONE (415) 227-0900 / FAX (415) 227-0770

File No.: C5732.0019
Direct Dial Number: (415) 227-3655
Email Address: pbales@buchalter.com

May 25, 2016

Judge Frederic Block
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *Ramesh Sarva, et al. v. Comerica Bank;* Case No. 1:15-CV-00219 FB RER

On May 6, 2016, at the pre-motion conference for Comerica Bank's proposed motion to dismiss under F.R.C.P. 12(b)(7) for failure to join a required party under Rule 19, the Court requested further briefing on whether the court-appointed plan administrator is a necessary party. Comerica incorporates all facts and legal authority set forth in its original letter brief, dated February 29, 2016, as though stated herein.  (*See* D.E. No. 44.)

In this lawsuit, Plaintiffs claim they should be paid $1.7 million from the assets of six trusts that fund an equal number of employee welfare benefit plans based in California. Comerica is the <u>directed</u> trustee of those trusts, i.e., it holds the assets and takes direction from the plan administrator.  The court-appointed plan administrator for those plans, Nicholas Saakvitne, is responsible for, and has ultimate control over, the use and disbursement of those plans' assets.  As explained below, Plaintiffs recently filed a motion in Saakvitne's pending California action admitting that Saakvitne is "**a necessary third party**" to this action.  Plaintiffs' judicial admissions should estop them from arguing anything to the contrary in this court.

On February 5, 2016, the court-appointed plan administrator filed suit against Plaintiffs in the C.D. California alleging that he is a necessary party to any action affecting the assets of the plans, and seeking to prohibit the disbursement of any trust assets to Plaintiffs to satisfy a judgment in this action.  (Ex. 1.)  On April 20, 2016, Plaintiffs filed a motion to dismiss in the C.D. California.[1]  (Ex. 2.)  Plaintiffs' motion explicitly states that "**Saakvitne is admittedly a necessary third party**" to this action.  (*Id.* at p. 12.)  The declaration submitted by Sarva's counsel, the same lawyer who represents Plaintiffs in this action, also acknowledges that Saakvitne is a necessary party, but shows that Plaintiffs have made very little effort to join him, other than to asking him to voluntarily join.  (Ex. 3, Harrington Declaration, ¶ 5 (where

---

[1] Although Plaintiffs argue that they should not be burdened to "travel 3,000 miles away to California," Plaintiffs are no strangers to California courts in litigation involving these plans.  In addition to the most recent appearance in Saakvitne's action, Plaintiffs have appeared and filed numerous motions/pleadings in the Department of Justice's 2013 action <u>against Plaintiff</u> (*United States of America v. Kenneth Elliott, et. al.*, C.D. Cal. No. 8:13-cv-01582) and in fact intervened in Comerica's 2014 declaratory relief action (*Comerica Bank v. Sea Nine Assocs. Inc. et al.*, C.D. Cal. No. 8:14-cv-00186.).

Buchalter Nemer

Judge Frederic Block
May 25, 2016
Page 2

Harrington declares that he proposed that "plaintiffs and Saakvitne enter into a stipulation which would voluntarily join **Saakvitne as a necessary party in the New York Action**.")[2]  Plaintiffs' motion filed in California also acknowledges that there is "the real possibility of conflicting judgments."  (Ex. 2, p. 6.)

The documents that govern the trusts and plans establish that the plan administrator is a necessary party.  Pursuant to the Master Trust agreement, the trustee is a directed trustee.  (Ex. 4, Master Trust, p. 7, Article 5.01.)  The Master Trust states that the trustee will only distribute the trust assets upon "written direction" from the administrator.  (*Ibid*.)  The Court Order appointing Saakvitne as the plan administrator also explicitly states that "Saakvitne shall have and shall exercise full authority and control with respect to the management or **disposition of the assets of the Sea Nine Plans**…"  (Ex. 5, Order, ¶ 2.)

Rule 19(a) sets forth that a party must be joined if: "(A) in the person's absence complete relief cannot be accorded among existing parties, or (B) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest." [3]

A court cannot award complete relief without the party who controls the source of the relief.  *See Paiute-Shoshone Indians v. City of Los Angeles*, 637 F.3d 993, 997-998 (9th Cir. 2011) (court could not award complete relief in absence of U.S. as party when requested relief would require U.S. to transfer title to land to plaintiff or hold land in trust for plaintiff.) and *Sypher v. Aetna Ins. Co.*, 2014 U.S. Dist. LEXIS 39420, *8-10 (E.D. Mich. Mar. 4, 2014) ("Because Plaintiff seeks benefits, and because those benefits would be paid by [the plan administrator], (1) the Court cannot grant complete relief in the absence of [the plan administrator], and (2) [the plan administrator] cannot protect its interests in the absence of joinder.").  A party who is responsible for the management of a trust that is subject of the litigation is a necessary party.'" *Mercer v. Mercer*, 2014 U.S. Dist. LEXIS 102009, *43-44, 2014 WL 3652117 (E.D.N.Y. May 22, 2014)(citations omitted)(finding that absent co-trustees and co-executors were necessary parties because they "are responsible for proper management of the trusts and adherence to the terms of the [governing contracts].")

---

[2] Saakvitne's Complaint states that the plan administrator is not subject to personal jurisdiction in New York.

[3] Rule 19(b) provides that:  "If a person who is required to be joined [under Rule 19(a)] cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."

BuchalterNemer

Judge Frederic Block
May 25, 2016
Page 3

Mr. Saakvitne is a necessary and indispensable party who cannot be joined.  If successful, Plaintiffs seek a judgment in this action against the assets belonging to the plans, which are administered by Saakvitne.  The plans' documents "grant [Mr. Saakvitne] the exclusive authority to disburse plan assets."  (Ex. 1, ¶ 3 and ¶ 20.)  Furthermore, "to the extent the plan documents require the Sea Nine Plans to indemnify [Comerica] for, *inter alia*, fees incurred pursuant to actions against it in its capacity as directed trustee [Sarva's pending New York action] has the potential for impact on the Sea Nine Plans' remaining assets, regardless of the outcome."  (*Id.* at ¶ 17.)  This is precisely why the plan administrator filed suit in California:  "[t]o avoid further unnecessary losses or claims accruing without his active participation, [Mr. Saakvitne] seeks a declaration that [...] he is a necessary party to any action affecting the assets of the Sea Nine VEBAs."  (*Id.* at ¶ 18.)

Plaintiffs' judicial admissions and the controlling contracts establish that Saakvitne is a necessary party to this action.  Comerica's proposed motion seeks an order dismissing the Amended Complaint in its entirety for failure to join the plan administrator, who cannot be joined because of lack of personal jurisdiction.[4]  (F.R.C.P. 12(b)(7).)  Alternatively, Comerica requests that this action be transferred to the Central District of California where all necessary parties can be joined.  *See* 28 U.S.C. § 1406(a) (if venue improper, court may transfer action to another district where it might have been brought originally) and *Pauley v. Pauley*, 58 F.R.D. 386, 387 (D. Md. 1972) (if indispensable party cannot be joined, case must be dismissed or transferred).

Respectfully submitted,

BUCHALTER NEMER
A Professional Corporation

By____/s/ Peter H. Bales_____
Peter H. Bales

cc:  Jason Robert Harrington and Bernard Ouziel, counsel for Plaintiffs

---

[4] Plaintiffs' Amended Complaint fails to comply with Rule 19(c), which required Plaintiffs to identify the plan administrator and plead the reasons for not joining him.  *See S & S Mach. Corp. v. General Motors Corp.*, 1994 U.S. Dist. LEXIS 13677, at *10 (S.D.N.Y. 1994) ("Rule 19(c) insures that other necessary parties be informed about the pending action and afforded the opportunity to respond to plaintiff's allegations.").

Buchalter Nemer

Judge Frederic Block
May 25, 2016
Page 4

## INDEX OF EXHIBITS:

1. **Exhibit 1**:  Complaint for Declaratory Relief filed on February 5, 2016 in C.D. California in Case No. 8:16-cv-00207 entitled *NICHOLAS L. SAAKVITNE, in his capacity as Court-Appointed Plan Administrator v. RAMESH SARVA et al.*

2. **Exhibit 2**:  Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss filed on April 20, 216 in 2016 in C.D. California in Case No. 8:16-cv-00207.

3. **Exhibit 3**:  Declaration of Jason R. Harrington filed on April filed on April 20, 216 in 2016 in C.D. California in Case No. 8:16-cv-00207.

4. **Exhibit 4**:  Southern California Medical Profession Association Voluntary Employees' Beneficiary Association Master Trust.

5. **Exhibit 5**:  Order of Appointment of Plan Administrator filed November 24, 2014 in C.D. California in Case No. No. 8:14-cv-00186 entitled *Comerica Bank v. Sea Nine Assocs. Inc. et al.*

# EXHIBIT 1

1  Jeremy M. Pelphrey (SBN 249862)
   Patrick J. Hagan (SBN 266237)
2  FOX ROTHSCHILD LLP
3  1800 Century Park East, Suite 300
   Los Angeles, CA 90067-1506
4  Tel: 310.598.4166 / Fax: 310.556.9828
   jpelphrey@foxrothschild.com
5  phagan@foxrothschild.com

6  Attorneys for Court-Appointed Plan
7  Administrator Nicholas L. Saakvitne

8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

11  NICHOLAS L. SAAKVITNE, in his          Case No.:
12  capacity as Court-Appointed Plan
    Administrator,                         **COMPLAINT FOR**
13                                         **DECLARATORY RELIEF**

14             Plaintiff,

15       v.

16
17  RAMESH SARVA, an individual; and
    RAMESH SARVA CPA, P.C., a New
18  York Professional Corporation,

19             Defendants.
20

21

22

23

24

25

26

27

28

1  Plaintiff Nicholas L. Saakvitne ("Plaintiff"), in his capacity as Court-Appointed

2  Plan Administrator to the Southern California Manufacturers' and Agricultural

3  Producers' League Voluntary Employees' Beneficiary Association Master Plan; the

4  Southern California Entertainment and Communication Guild Voluntary Employees'

5  Beneficiary Association Master Plan; the Southern California Medical Profession

6  Association Voluntary Employees' Beneficiary Association Master Plan; the Southern

7  California Retail Merchants' League Voluntary Employees' Beneficiary Association

8  Master Plan; the California Building Supply, Wholesalers' and Contractors' League

9  Voluntary Employees' Beneficiary Association Master Plan; and the Southern

10 California Consultants' and Financial Planners' Profession Association Voluntary

11 Employees' Beneficiary Association Master Plan (collectively, "the Sea Nine

12 VEBAs"), hereby files this Complaint and alleges as follows:

13                          **SUMMARY OF ACTION**

14     1.     This is a civil action seeking declaratory relief pursuant to the

15 Declaratory Judgment Act, 28 U.S.C. § § 2201, et seq., and the Employee Retirement

16 Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001-1191c.

17     2.     Plaintiff brings this action in response to a recent complaint filed in the

18 United States District Court for the Eastern District of New York by a former

19 administrator of the Sea Nine VEBAs, Ramesh Sarva ("Sarva"), against Comerica

20 Bank ("Comerica") in its capacity as the directed trustee of the Sea Nine VEBAs,

21 seeking damages purportedly arising from an alleged breach of oral contract (the

22 "New York Action," E.D.N.Y. no. 1:15-cv-00219-FB-RER (filed Jan. 15, 2015)).

23 Plaintiff is not a party to the New York Action.

24     3.     In light of Sarva's failure to name Plaintiff as a defendant in his New

25 York Action, given the absence of the New York court's jurisdiction over Plaintiff

26 personally, and in accordance with the provisions in the Sea Nine VEBAs' plan

27 documents which grant Plaintiff the exclusive authority to disburse plan assets,

28 Plaintiff seeks a declaration that Comerica may not disburse the Sea Nine VEBAs

1  plan assets under any circumstance pursuant to any judgment or order in the New

2  York Action and/or that Sarva may not seek such assets without a judgment or order

3  enforceable as to Plaintiff directly. In other words, Plaintiff seeks a declaration that he

4  is a necessary party to any action affecting the assets of the Sea Nine VEBAs.

5  ## PARTIES

6      4.    Plaintiff is an individual residing in Pacific Palisades, California.  By the

7  order of the Honorable Josephine L. Staton, Judge of the United States District Court

8  for the Central District of California, he is the Plan Administrator for the Sea Nine

9  VEBAs.

10      5.    Defendant Sarva is an individual residing and domiciled in Little Neck,

11  New York.  He is a former promoter and advocate of the Sea Nine VEBAs, now

12  enjoined by court order from such activity.

13      6.    Defendant Ramesh Sarva, CPA, P.C. ("Sarva PC") is a corporation

14  organized under the laws of the State of New York with its principal place of business

15  in Sunnyside, New York.

16  ## JURISDICTION & VENUE

17      7.    This Court has diversity jurisdiction over this matter pursuant to 28

18  U.S.C. § 1332 because there is diversity of citizenship of the parties and an amount in

19  controversy greater than $75,000.  This Court also has federal question jurisdiction

20  over this matter pursuant to 28 U.S.C. § 1331 because the dispute arises under federal

21  ERISA law.

22      8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the

23  underlying events giving rise to this Complaint happened in this district, and there are

24  multiple related cases currently pending before this Court pertaining to the Sea Nine

25  VEBAs, which were formed in this district.

26  ## FACTUAL ALLEGATIONS

27      9.    From 2001 until otherwise enjoined by this Court, Sarva and an

28  individual named Kenneth Elliott ("Elliott"), through various business entities

---

2

**COMPLAINT FOR DECLARATORY RELIEF**

1   including Sea Nine Associates, Inc. ("Sea Nine"), promoted and sold to high-income
2   closely-held businesses certain welfare benefit arrangements known as voluntary
3   employee beneficiary associations, or VEBAs.  The Sea Nine VEBAs were among
4   those promoted and sold by Sarva and Elliott.

5       10.    From their inception, the Sea Nine VEBAs were intended to qualify as
6   multiple employer plans, and later as "10 or more employer plans" under Internal
7   Revenue Code section 419A(f)(6), so that the funding and deductible contribution
8   limitations of the Code would not apply to the participating employer, thereby
9   providing the participating employer substantial tax deductions.  Additionally, the Sea
10  Nine VEBAs themselves were intended to be exempt from income tax to the insured
11  under Code section 501(c)(9), which includes a specific exemption for VEBAs.

12      11.    In accordance with 29 U.S.C. § 1103(a)(1), the Sea Nine VEBAs'
13  original plan documents designated a "committee" of plan administrators which were
14  appointed to direct the actions of the plans' trustee.  Pursuant to the original plan
15  documents, the committee – which typically included Elliott and/or Sarva among its
16  members – had exclusive control over the disposition, investment, and disbursement
17  of trust assets; the directed trustee's role was limited to complying with the
18  committees' instructions to the extent permitted by applicable law.

19      12.    In 2007, Comerica became the directed trustee of the Sea Nine VEBAs.

20      13.    On October 9, 2013, the United States Department of Justice filed a
21  complaint against Sea Nine, Elliot, and Sarva alleging, *inter alia*, that the Sea Nine
22  VEBAs were unlawful tax shelters.  *United States of America v. Kenneth Elliott et al.*,
23  C.D. Cal. no. 8:13-cv-01582-JLS-JPR (filed Oct. 9, 2013) (the "DOJ Action").   In
24  September 2014, the Honorable Josephine L. Staton of the federal district court for the
25  Central District of California entered judgments against Sea Nine, Elliott, and Sarva,
26  permanently enjoining them from further promoting or administering any VEBA.
27  *United States of America v. Kenneth Elliott et al.*, C.D. Cal. no. 8:13-cv-01582-JLS-
28  JPR (filed Oct. 9, 2013).

**COMPLAINT FOR DECLARATORY RELIEF**

1      14.    In response to the DOJ Action, on February 7, 2014, Comerica filed an

2  action for, *inter alia*, declaratory relief and the appointment of a new plan

3  administrator. *Comerica Bank v. Sea Nine Assocs. Inc., et al.*, C.D. Cal. case no.

4  8:14-cv-00186-JLS-JLR. On November 24, 2014, pursuant to Comerica's requests

5  for relief in that action, the court appointed Plaintiff as the administrator for the Sea

6  Nine VEBAs and authorized him to take full control of those plans to ensure an

7  orderly wind-down and distribution of assets or a stable and continued operation. On

8  October 30, 2015, Plaintiff duly submitted his proposal for the Sea Nine Plans' wind-

9  down and distribution of assets or continued operation (at the election of the plan

10  participants), which was approved by the court on December 11, 2015.

11      15.    On January 22, 2016, Sarva and his corporate alter ego, Sarva PC, filed a

12  first amended complaint ("FAC") against Comerica in the New York Action. Sarva's

13  FAC purports to repair his original complaint's failure to identify Comerica in its

14  capacity as trustee of the Sea Nine VEBAs.

15      16.    Like Sarva's original complaint, the FAC asserts three causes of action,

16  for breach of contract, account stated, and *quantum meruit*. In support of those

17  claims, Sarva alleges that he entered into an oral agreement with Comerica to act as

18  the bookkeeper and accountant for the Sea Nine Plans between 2007 and 2013, in

19  exchange for an administrative fee of $1,200.00 per year, per member. Sarva alleges

20  that he performed those services for 236 members, prompting a total demand "in

21  excess of $1,700,000.00." On information and belief, Sarva's FAC was accompanied

22  by an assertion that he intends to collect a judgment in the New York Action from the

23  assets belonging to the Sea Nine VEBAs.

24      17.    The evidence supporting Sarva's claims – which appears to be only the

25  testimony of Sarva and Elliott themselves – is not credible. Nonetheless, to the extent

26  the plan documents require the Sea Nine Plans to indemnify the directed trustee for,

27  *inter alia,* fees incurred pursuant to actions against it in its capacity as directed trustee,

28

**COMPLAINT FOR DECLARATORY RELIEF**

1  the New York Action has the potential for impact on the Sea Nine Plans' remaining
2  assets, regardless of the outcome.

3      18.    To avoid further unnecessary losses or claims accruing without his active
4  participation, Plaintiff seeks a declaration that, pursuant to the plan documents and in
5  accordance with 29 U.S.C. § 1103(a)(1), he is a necessary party to any action affecting
6  the assets of the Sea Nine VEBAs.

7              **CAUSE OF ACTION FOR DECLARATORY RELIEF**

8      19.    Plaintiff incorporates and realleges by reference the foregoing paragraphs
9  as if fully set forth herein.

10     20.    In light of Sarva's amendment of his demand in the New York Action to
11 identify Comerica in its capacity as the directed trustee of the Sea Nine VEBAs, given
12 the absence of the New York court's jurisdiction over Plaintiff personally, and in
13 accordance with the provisions in the Sea Nine VEBAs' plan documents which grant
14 Plaintiff the exclusive authority to disburse plan assets, an actual controversy now
15 exists between the parties.  Specifically, Sarva seeks a judgment against Comerica to
16 recover the Sea Nine Plans' assets which can only be disbursed by Plaintiff in
17 accordance with the plan documents and  29 U.S.C. § 1103(a)(1).

18     21.    A judicial determination  resolving this actual controversy is necessary
19 and appropriate at this time, and Plaintiff seeks declaratory relief accordingly pursuant
20 to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

**COMPLAINT FOR DECLARATORY RELIEF**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.    For a judicial declaration that Comerica may not disburse the Sea Nine VEBAs plan assets under any circumstance pursuant to any judgment or order in the New York Action; that neither Sarva nor Sarva PC may not seek such assets without a judgment or order enforceable as to Plaintiff directly; and that Plaintiff is a necessary party to any action affecting the assets of the Sea Nine VEBAs.

2.    For costs of suit; and

3.    For such further relief as the Court deems just and proper.

Dated: Feb. 5, 2016

FOX ROTHSCHILD LLP

By: _____
Jeremy M. Pelphrey
Patrick J. Hagan
Attorneys for NICHOLAS
L. SAAKVITNE in his
capacity as Court-
Appointed Plan
Administrator

**COMPLAINT FOR DECLARATORY RELIEF**

# EXHIBIT 2



Ramesh Sarva
43-33 48th Street
Lower Level
Sunnyside, NY 11104
T: 718.268.4895
F: 646.961.4778
E: ramesh@sarva.org

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

APR 2 0 2016

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

RECEIVED
BUT NOT FILED

APR 2 0 2016

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

NICHOLAS J. SAAKVITNE, in
his capacity as Court-Appointed
Plan Administrator

Plaintiff,

v.

RAMESH SARVA, et al.,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 8:16-cv-00207
**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS OR, in the alternative, TRANSFER
VENUE**

Date:       June 17, 2016
Time:       2:30 p.m.
Judge:      Hon. Josephine L. Staton
Courtroom:  10A

## TABLE OF CONTENTS

Page(s)

I.   Preliminary Statement...........................................................................1

II.  Statement of Facts..............................................................................2

III. Motion to Dismiss...............................................................................3

      A.  The complaint must be dismissed for failure to establish plaintiff's standing to
          sue............................................................................................3

          1.  Plaintiff's complaint must be dismissed because plaintiff has not
              demonstrated he has been or will imminently suffer injuries.................3

          2.  The Sea Nine VEBA Plan participants are the injured party. Thus,
              plaintiff's complaint must be dismissed......................................4

      B.  This Court should exercise its discretionary authority to decline granting
          declaratory relief and, instead, dismiss this action.........................4

          1.  The complaint must be dismissed for practical reasons in the interest of
              judicial expediency.........................................................5

          2.  This lawsuit must be dismissed when the purpose of the action is
              procedural in nature and is designed to delay and forum shop, especially
              when there is a better, more effective alternative............................6

      C.  This action should be dismissed under 28 U.S.C § 1406(a) rather than
          transferred...................................................................8

IV.  Motion to Transfer..............................................................................9

      A.  This lawsuit must be transferred to New York where venue is proper pursuant to
          28 U.S.C. §1391.............................................................9

      B.  This action should be transferred to the United States District Court for the
          Eastern District of New York in the interest of justice under § 1404(a) as the
          factors weigh heavily in favor of transfer...................................10

V.   Conclusion........................................................................................12

## TABLE OF AUTHORITIES

**Cases**

*Abidor v. Napolitano,*
   990 F. Supp.2d. 260 (EDNY, 2013) ........................................................5

*Decker Coal Co. v. Commonwealth Edison Co.,*
   805 F.2d 834, 843 (9th Cir. 1986)....................................................10

*General Tire & Rubber Co. v. Watkins,*
   C.A.4th, 1967, 373 F.2d 361, 369, certiorari denied 386 U.S. 960.....................................11

*Hartford Cas. Ins. Co. v. Bluemile, Inc.,*
   2013 WL 1090329 (S.D. Ohio 2013)............................................................7

*Los Angeles Mem. Coliseum Comm. v. National Football League,*
   89 F.R.D. 497, 499 (C.D. Cal. 1981), aff'd, 726 F.2d 1381 (9th Cir. 1984).....................10

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555, 560 (1992)........................................................................3

*McCormack v. Safeway Stores, Inc.,*
   2012 WL 5948965, at *4 (N.D. Cal. Nov. 28, 2012)........................................10

*Mid-Continent Cas. Co. v. Village at Deer Creek Homeowners Ass'n, Inc.,*
   685 F.3d 977 (10th Cir. 2012)............................................................7

*Nichols v. G.D. Searle & Co.,*
   991 F.2d 1195, 1201 (4th Cir. 1993).....................................................8

*Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant,*
   760 F.2d 312 (D.C. Cir. 1985)........................................................8

*Ostrander v. Linn,*
   22 N.W.2d 223 (1946)........................................................................5

*Paaluhi v. U.S.,*
   No. 05-3997, 2006 WL 5671235, at *1 (C.D. Cal. Feb. 1, 2006)......................10

*Polk County Recreational Ass'n v. Susquehanna Patrior Commercial Leasing Co., Inc.,*
    734 N.W.2d 750 (2007)..................................................................................................5

*POM Wonderful LLC v. F.T.C.,*
    894 F. Supp. 2d 40 (D.D.C. 2012).................................................................................7

Quiring v. GEICO General Ins. Co.,
    953 N.E.2d 119 (Ind. Ct. App. 2011)............................................................................7

*Seattle Audobon Oc. v. Moseley,*
    80 F.3d 1401 (9th Cir. 1996).........................................................................................4

*Shotz v. Cates,*
    256 F.3d 1077, 1081 (11th Cir. 2001)...........................................................................3

*Simon v. E. Kentucky Welfare Rights Org.,*
    426 U.S. 26, 38 (1976)..................................................................................................3

*Sparling v. Hoffman Constr. Co.,*
    864 F.2d 635, 639 (9th Cir. 1988)...............................................................................10

*Stewart Org., Inc. v. Ricoh Corp.,*
    487 U.S. 22, 29 (1988).................................................................................................10

*Whitmore v. Arkansas,*
    495 U.S. 149, 155 (1990)..........................................................................................3, 4

*Wilton v. Seven Falls Co.,*
    515 U.S. 277 (1995)......................................................................................................4

**Statutes**
U.S. Constitution, Article III, Section 2, Clause 1......................................................3
28 U.S.C. §§ 1391(b)(1), (b)(2), (b)(3).................................................................9, 10
28 U.S.C. § 1404(a)..................................................................................................9, 10
28 U.S.C. § 1406(a).........................................................................................................8
28 U.S.C. §§ 2201, et. seq. ..........................................................................................4

## I.    Preliminary Statement

Nicholas Saakvitne's motivation in filing this California lawsuit for declaratory relief was to disrupt and interfere with the litigation currently pending in the United States District Court for the Eastern District of New York ("New York Action").[1]  In essence, plaintiff and Comerica Bank, in its capacity as trustee to the Sea Nine VEBA Plans,[2] hatched a plan hoping to circumvent another federal court judge's decision not to transfer the New York Action to California.  But, this lawsuit and plaintiff's motivation fly in the face of long-held judicial principles.  As will be demonstrated, plaintiff lacks standing to sue because there is no injury-in-fact or even an imminent one; the declaratory relief sought is at odds with the judicial values of efficiency; and, plaintiff's counsel knew or should have known that this lawsuit was meant to delay, disrupt, or forum shop.  For all those reasons, not the least of which is the preservation of judicial economy, this case must be dismissed.

But, if this Court determines that dismissal is not warranted, it should, in the alternative, transfer this case from the federal courts of California to the venue of the pending New York Action.  In the arguments below, this Court will find that the instant case could have -- and should have -- been brought in the Eastern District of New York because there is already a pending, related litigation, defendants reside there, the events from which this action arise occurred there, and plaintiff has plead that he is a necessary party to the New York Action.

---

1   Ramesh Sarva, individually, and on behalf of Ramesh Sarva CPA, P.C. v. Comerica Bank, in its capacity as Trustee, 15-cv-0219-FB-RER.

2   Individually, the Sea Nine VEBA plans are: the Southern California Manufacturers' and Agricultural Producers' League Voluntary Employees' Beneficiary Master Plan; the Southern California Entertainment and Communication Guild  Voluntary Employees' Beneficiary Master Plan; the Southern California Medical Profession Association  Voluntary Employees' Beneficiary Master Plan; the Southern California Retail Merchants' League  Voluntary Employees' Beneficiary Master Plan; the California Building Supply, Wholesalers' and Contractors' League  Voluntary Employees' Beneficiary Master Plan; and the Southern California Consultants' and Financial Planners' Professional Association  Voluntary Employees' Beneficiary Master Plan.

1

For reasons articulated below, the Court should dismiss Saakvitne's complaint or, in the alternative, transfer the instant case to the Eastern District of New York.

## II.    Statement of Facts

On December 10, 2014, Ramesh Sarva, an individual, and Ramesh Sarva CPA, P.C. ("New York Action Plaintiffs") commenced a lawsuit in the Supreme Court of New York, County of Queens against Comerica Bank ("New York Action Defendant"). Exhibit A. The core of that lawsuit is straightforward: Comerica Bank retained Sarva to provide accounting, bookkeeping, and administrative services, but failed to pay him for such services rendered. See generally, Exhibit A. On January 15, 2015 the case was removed to the United States District Court for the Eastern District of New York. Exhibit B. Shortly after removal, Comerica Bank filed a letter to transfer venue from New York to California. Exhibit C. After oral argument, the Eastern District of New York was "inclined" not to grant Comerica Bank's motion to transfer, Exhibit D, and Comerica Bank agreed not to pursue such a motion. Exhibit E.

On October 7, 2015, Comerica Bank filed a letter seeking leave to file a motion for summary judgment essentially alleging that "Comerica Bank, in its capacity as trustee of the Sea Nine VEBA Plans," should be the named defendant, not "Comerica Bank," the banking institution. Exhibit F. Three months later, Sarva entered into a stipulation with Comerica Bank to amend the complaint to reflect the new defendant "Comerica Bank, in its capacity as trustee of the Sea Nine VEBA Plans."[3] Exhibit G. Sarva filed the amended complaint on January 22, 2016. Exhibit H. Two weeks after that, Nicholas Saakvitne filed his complaint in the Central District of California seeking a declaratory judgment and declaratory relief that directly stems from the New York Action. See, Complaint.

---

3   Hereinafter, "Comerica Bank" shall mean "Comerica Bank, in its capacity as trustee of the Sea Nine VEBA Plans," unless otherwise noted.

2

### III.   Motion to Dismiss

This action must be dismissed for three reasons: A) Plaintiff lacks standing to bring this action; B) This Court's discretionary right in refusing to grant declaratory relief; and C) Plaintiff purposely laid venue in the wrong district.

A.   <u>The complaint must be dismissed for failure to establish plaintiff's standing to sue.</u>

The U.S. Constitution extends jurisdiction to the federal courts only over "cases" and "controversies." U.S. Constitution, Article III, Section 2, Clause 1.  The Supreme Court has held that the "irreducible constitutional minimum of standing contains three elements." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992).  First, the plaintiff must have suffered an "injury-in-fact" which is both: (a) "concrete and particularized"; and (b) "actual or imminent, not conjectural or hypothetical." <u>Id.</u> (internal quotation marks omitted).  Second, a plaintiff must establish a "causal connection" between the injury and the defendant's acts. <u>Id.</u>  Finally, the injury must be "likely to be redressed by a favorable decision." <u>Simon v. E. Kentucky Welfare Rights Org.</u>, 426 U.S. 26, 38 (1976).  A plaintiff seeking to establish standing "must clearly and specifically set forth facts" sufficient to satisfy the constitutional requirements. <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 155 (1990).  On deciding a defendant's motion to dismiss, a federal court "must evaluate standing based on the facts alleged in the complaint, and … may not speculate concerning the existence of standing or piece together support for the plaintiff." <u>Shotz v. Cates</u>, 256 F.3d 1077, 1081 (11th Cir. 2001) (internal quotation marks omitted).

1.   <u>Plaintiff's complaint must be dismissed because plaintiff has not demonstrated that he has been or will imminently suffer injuries.</u>

In this case plaintiff argues for a "judicial declaration [from the Central District of California] that Comerica may not disburse Sea Nine VEBAs plan assets"; that "neither [defendant] may seek such assets without a judgment or order enforceable as to plaintiff directly"; that "plaintiff is a necessary party to [the New York Action]." Complaint, ¶¶ 19-21; Prayer for Relief ¶ 1.  Here, plaintiff has failed

3

to plead that he suffered an injury and, indeed, has not suffered any real injury – neither concrete or particularized, nor actual or imminent.  Saakvitne does allege, however, that since the Sea Nine VEBA Plans are required to "indemnify the directed trustee for...fees incurred pursuant to actions against it in its capacity as directed trustee, the New York Action has the potential for impact on the Sea Nine Plans' remaining assets, regardless of the outcome," Complaint ¶ 17.  This is nothing more than a fanciful or hypothetical injury as Saakvitne simply will not be injured at all – the plan participants will.  Furthermore, plaintiff has failed to "clearly and specifically set forth facts" which would support this allegation. Whitmore, at 155.  Without additional information, this is an empty allegation that falls short of the constitutional standard.  Thus, plaintiff's complaint should be dismissed since no injury has occurred

> 2.   The Sea Nine VEBA Plan participants are the injured party, not plaintiff.  Thus, plaintiff's complaint must be dismissed.

Finally, and most importantly, even if there was a run on assets (as alleged in paragraph 17 of the Complaint), there is no harm suffered by the administrator, whose only duties are to monitor and disburse assets upon a participants' death.  Unfortunately, the true victims here are the employer-employee participants of the Sea Nine VEBA Plans who have spent years and decades contributing hard-earned monies to this fund, only to have those monies pay for legal fees.

> B.   This Court should exercise its discretionary authority to decline granting declaratory relief and, instead, dismiss this action.

The purpose of the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et. seq.* is to settle controversies before those controversies ripen into legal violations, Seattle Audobon Oc. v. Moseley, 80 F.3d 1401 (9th Cir. 1996).  Moreover, any relief sought under the Act is not granted as of right, but rather at the sound discretion of the court. Wilton v. Seven Falls Co., 515 U.S. 277 (1995).  Consequently, "[i]n the declaratory judgment context," federal courts may dismiss a declaratory action after considering practical reasons and exercising wise judicial administration (Id. at 288).

4

Furthermore, the granting of declaratory relief must be exercised cautiously and with due regard to all

the circumstances in the case, <u>see</u>, <u>Abidor v. Napolitano</u>, 990 F. Supp.2d. 260 (EDNY, 2013).  As

demonstrated below, the preservation of judicially-efficient principles and the surrounding

circumstances of this case, such as plaintiff's overt attempt at forum shopping (for a friend), heavily

weigh in favor of dismissing this action.

      1.  <u>The complaint must be dismissed for practical reasons in the interest of judicial expediency.</u>

There are many practical reasons why this case must be dismissed in the interest of judicial

economy.  First, where another pending action will dispose of all controverted issues, a district court

has the discretion to refuse declaratory relief and, instead, dismiss the complaint. <u>See</u>, <u>Polk County</u>

<u>Recreational Ass'n v. Susquehanna Patrior Commercial Leasing Co., Inc.</u>, 734 N.W.2d 750 (2007);

<u>Ostrander v. Linn</u>, 22 N.W.2d 223 (1946).  Plaintiff commenced this lawsuit on February 5, 2016

seeking declaratory relief in direct response to the January 22, 2016 filing of the amended complaint in

the New York Action.  In the name of efficiency, this Court should dismiss and allow the Hon.

Frederick Block, the judge presiding over the New York Action, to settle and dispose of this issue along

with the underlying matter because he is familiar with all facts and circumstances of the New York

Action.

Second, by commencing this lawsuit, Saakvitne has caused delay and disruption to the pending

New York Action.  It's not in any parties' – i.e. Comerica Bank, Saakvitne, and Sarva – interest for this

Court to make a determination stemming from issues that have been grounded in New York since 2014.

Because of his actions, Saakvitne has now tied up two judges and two judicial systems with matters

that can be settled and determined with one judge and one system.  This, in itself, is at odds with the

principles of judicial economy and, therefore, the action should be dismissed.

Third, by filing this lawsuit in the federal courts of the Central District of California, plaintiff

has now created the real possibility of conflicting judgments.  For instance, if the New York Action

plaintiffs are successful in their claims, then the Eastern District of New York will direct Comerica

Bank to pay those plaintiffs from the assets held by Comerica Bank, as trustee.  To the contrary,

Saakvitne seeks a judicial declaration preventing Comerica from disbursing those monies held in trust.

This scenario undoubtedly delays the end result in the New York Action, as the EDNY must address the

issues brought in this instant action before making a final determination.

Finally, Saakvitne's prayer for relief asserts, *inter alia*, that he (as administrator) is a "necessary

party to any action affecting the assets of the Sea Nine VEBAs." (Complaint, Prayer for Relief ¶ 1).

However, when Jason Harrington[4] requested of Jeremy Pelphry, Saakvitne's counsel, to discontinue the

instant action and stipulate to join as a necessary party in the New York Action, he refused.

(Harrington Dec., ¶ 6).   On one hand, Saakvitne pleads that he is a necessary party to "any litigation

affecting the assets of the Sea Nine VEBA Plans"; but, when faced with an opportunity to join as a

necessary party, he refused.  This suggests that Saakvitne and his counsel do not prefer to adjudicate

this dispute and the underlying dispute in an economic or expeditious fashion. To defendants, it's clear

Saakvitne and his counsel are creating as many obstacles as possible for the federal courts to adjudicate

the merits of this case.

In sum, the actions of both Saakvitne and his counsel are at odds with the timely held judicial

principles of declaratory relief: the granting of which is discretionary and should only be used to

expeditiously and speedily find relief.  If this case is not dismissed, this matter will defeat that tenet as

the filing of this lawsuit causes, has caused, and will cause a drain on client resources, firm resources,

and judicial resources.  For the above reason, the complaint must be dismissed.

---

4  Mr. Harrington is co-counsel for the plaintiffs in the New York Action.  His declaration is submitted
   herewith.

6

> 2.   This lawsuit must be dismissed when the purpose of the action is procedural in nature and is designed to delay and forum shop, especially when there is a better, more effective alternative.

A district court has the discretion to dismiss an action commenced on declaratory grounds when: a better, more effective alternative exists, Mid-Continent Cas. Co. v. Village at Deer Creek Homeowners Ass'n, Inc., 685 F.3d 977 (10th Cir. 2012); Hartford Cas. Ins. Co. v. Bluemile, Inc., 2013 WL 1090329 (S.D. Ohio 2013); the action is being used for procedural fencing, POM Wonderful LLC v. F.T.C., 894 F. Supp. 2d 40 (D.D.C. 2012); and, the relief sought will not terminate the controversy giving rise to the proceedings, see, Quiring v. GEICO General Ins. Co., 953 N.E.2d 119 (Ind. Ct. App. 2011). In the case at hand, it is clear that the above scenarios exist and, due to their existence this action must be dismissed.

Most importantly, this action must be dismissed because a better, more effective alternative exists to arrive at the relief sought by plaintiff. Rather than adjudicating a declaratory action in the federal courts of California, this Court should dismiss this case and order Saakvitne, if he wants relief, to intervene in the Eastern District of New York as a necessary party. Looking through the lens of judicial economy, this alternative is sound and plausible.

As will be demonstrated in more detail below, the totality of the circumstances indicates that the filing of the instant action is an attempt by plaintiff to circumvent Judge Block's prior inclination not to transfer venue in hopes that he can assist New York Action defendant Comerica Bank in transferring venue to California. It can be shown that Saakvitne and Comerica Bank have a long and friendly history; Saakvitne and Comerica Bank have supported (and fought for) each other in numerous other litigations; Comerica Bank has tried on no less than two occasions to transfer venue from New York to California; and, an email from Comerica Bank's counsel to plaintiffs' counsel in the New York Action all suggest that the commencement of this lawsuit was a concerted effort by Saakvitne and Comerica

7

Bank to transfer venue of the New York Action to California.

Finally, the declaratory relief sought by plaintiff, if granted, will not terminate the proceedings in New York, which is where the bottom-line controversies lie.  If declaratory relief is granted to plaintiff in this case, it does nothing more than stall the New York Action, and does not clarify or determine any matters.

For the above reasons, this case should be dismissed with prejudice and Saakvitne should be ordered to intervene in New York.

C.     In the interest of justice, this action should be dismissed under 28 U.S.C. § 1406(a) rather than transferred.

Under 28 U.S.C. § 1406(a), a district court shall dismiss a case "laying venue in the wrong division or district."

Here, transfer is not in the "interest of justice" because this action was filed in a judicial district that was incorrect and far less plausible than the proper judicial district, the Eastern District of New York.  See, e.g., Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant, 760 F.2d 312 (D.C. Cir. 1985) (dismissing action for lack of venue where plaintiff chose District of Columbia forum "simply to suit its own purpose"); Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1201 (4th Cir. 1993) (explaining that it is not in the "interest of justice" to transfer an action that was "obviously" or "deliberately" filed in the wrong court).

In this case, it is clear that plaintiff deliberately filed this action in the wrong court to assist Comerica Bank as a defendant in the New York Action.  That intention is supported by: Saakvitne and Comerica Bank's long and friendly history,[5] Saakvitne and Comerica Bank's support of each other in

---

5  So as not to overwhelm the Court with endless exhibits, the following non-exhaustive list of documents from *Comerica Bank v. Sea Nine Associates, et. al.* 14-cv-00186, demonstrates the close relationship between Comerica Bank and Nicholas Saakvitne: a) ECF Doc. 54 (Comerica

8

numerous other litigations (see e.g., Exhibit I), Comerica Bank's two or more attempts to transfer venue

from New York to California (see e.g., Exhibit C), and, an email from Comerica Bank's counsel to

plaintiffs' counsel in the New York Action (see, Exhibit J).[6]

Taking into account the totality of the above circumstances, it's apparent that Comerica Bank

and Saakvitne, to suit their own purposes, hatched a plan, which centered around Saakvitne filing this

action, in an attempt to forum shop or disrupt the New York Action. As a result of plaintiff's actions,

the complaint should be dismissed. To rule otherwise would reward plaintiff and plaintiff's counsel and

would undoubtedly encourage this type of frivolous litigation/motion practice against limited-resource

parties in the future.

**IV.    Motion to Transfer**

If the Court determines that dismissal is not warranted, the action should be transferred to the

United States District Court for the Eastern District of New York under 28 U.S.C. §§ 1404(a). The

threshold question under both §§ 1404(a) is whether this case could originally have been brought in the

Eastern District of New York. Venue is proper in any judicial district in which "any defendant resides,

if all defendants are residents of the State in which the district is located" or "a substantial part of the

events or omissions giving rise to the claim occurred" or "any judicial district in which any defendant

is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. §§ 1391(b)(1),

(b)(2), (b)(3).

A.    This lawsuit must be transferred to New York where venue is proper pursuant to 28 U.S.C. §1391.

---

Recommends Saakvitne as Court-Appointed Trustee); b) ECF Docs. 66, 85, 101, 120 (Reports Reflect Conferences Between Comerica Bank and Saakvitne and an Agreeance Between the Two to Provide Further Reports); and c) ECF Docs. 87, 103, 112, 121 (Documents Show Comerica Does Not Object to Replenshing Saakvitne's Retainer).

6   It is interesting to note that, despite the sophistication of plaintiff's counsel, for reasons unknown, Saakvitne has not filed a default against either defendant in this matter.

In the instant case, plaintiff seeks declaratory relief from this Court in the Central District of California.  But, from the face of the complaint, there can be no dispute that the center of gravity in this case is in New York.

Defendants – both Ramesh Sarva and Ramesh Sarva CPA, P.C. - are subject to personal jurisdiction in New York as both the individual and the corporation reside there.  Complaint, ¶¶ 5&6.  Furthermore, the event that gives rise to plaintiff's claim is the filing of an amended complaint in the Eastern District of New York (See Exhibit).  Thus, this case could have and should have been brought in the Eastern District of New York for the oldest and most common of reasons: <u>all of the events giving rise to plaintiff's complaint occurred in New York and defendants are subject to personal jurisdiction there.</u> (<u>See</u>, 28 U.S.C. §§ 1391).  That it was brought in California is only due to Nicholas Saakvitne and Comerica Bank's desire to disrupt the pending litigation in New York.

B.   <u>This action should be transferred to the United States District Court for the Eastern District of New York in the interest of justice under § 1404(a) as the factors weigh heavily in favor of transfer</u>

Once it is established that the action could have been brought in the proposed transferee forum, the court must determine whether "the interests of justice" make transfer appropriate. (28 U.S.C. § 1404(a); <u>Los Angeles Mem. Coliseum Comm. v. National Football League</u>, 89 F.R.D. 497, 499 (C.D. Cal. 1981), aff'd, 726 F.2d 1381 (9th Cir. 1984)).  When considering a transfer, courts will weigh private and public interest factors which affect the convenience of the forum. <u>Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 F.2d 834, 843 (9th Cir. 1986).  Despite the numerous 1404(a) factors, the main focus under the statute is to determine the location of the center of gravity of the litigation. <u>Paaluhi v. U.S.</u>, No. 05-3997, 2006 WL 5671235, at *2 (C.D. Cal. Feb. 1, 2006); <u>see also</u>, <u>McCormack v. Safeway Stores, Inc.</u>, 2012 WL 5948965, at *4 (N.D. Cal. Nov. 28, 2012) (noting that "a fundamental principle underpinning the § 1404(a) analysis is that litigation should proceed in that place where the

case finds its 'center of gravity.'") Furthermore, section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness" see, Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Sparling v. Hoffman Constr. Co., 864 F.2d 635, 639 (9th Cir. 1988) while minding the practical problems that "make trial of a case easy, expeditious, and inexpensive" see, Los Angeles Mem. Coliseum Comm., 89 F.R.D. at 499; see also Decker Coal, 805 F.2d at 843). For reasons set forth below, the transfer of this case to New York is warranted.

First, transferring this case to New York, where it will be available for consolidation with the New York Action, will uphold the principles of judicial efficiency and maintenance of judicial economy see generally, General Tire & Rubber Co. v. Watkins, C.A.4th, 1967, 373 F.2d 361, 369, certiorari denied 386 U.S. 960)[the court ordered a complex case transferred "to Ohio where it will be available for consolidation (with another case involving substantially the same factual issues)—the only way in which time and effort can now be saved."]). Since the instant case involves all of the same factual issues with the pending New York Action, it is in the best interest to transfer this case so as to support the "impelling need for efficiency in the administration of [the] court system." (Id. at 373 F.2d at 368).

Second, New York is the "center of gravity" here because the events that give rise to plaintiff's filing are entirely located within the state of New York. To begin with, the filing of plaintiff's February 5, 2016 complaint was directly in response to Sarva's filing of his January 22, 2016 amended complaint in the New York Action. Complaint, ¶¶ 15 & 16. Furthermore, the relief sought in plaintiff's complaint hinges completely on the adjudication of the merits in the New York Action, which are to be determined under New York law. Essentially, the events giving rise to plaintiff's alleged claims and relief occurred in New York. For that reason, this case must be transferred.

Third, if this case is not transferred, Sarva will be severely prejudiced in litigating this action in

11

the state of California.  Defendant Sarva simply doesn't have the resources of a large law firm and

cannot afford a litigation in California.  More importantly, Courtcall is unavailable to Sarva in the court

of Honorable Josephine L. Staton.  As such, it would become unduly expensive and burdensome for

Sarva to appear personally for every required court appearance.  This would also be at odds with trying

a matter as "easy, expeditious, and inexpensive" as possible.  On the other hand, litigating in the

Eastern District of New York allows Saakvitne to appear telephonically, which essentially preserves

judicial economy.

Finally, since Saakvitne is admittedly a necessary third party (Complaint, ¶ 18 & Prayer for

Relief ¶ 1) to the New York Action, he should discontinue this matter and intervene or be joined in New

York so all parties to this action – and the underlying action – can adjudicate this matter expeditiously

and efficiently.  However, plaintiff, in bad faith, has refused to stipulate to being added as a necessary

3rd party and has failed to motion the Eastern District of New York to intervene; therefore, this action

should be transferred to avoid plaintiff's attempt at undermining the judicial principles of economy.

V.   **Conclusion**

The bottom-line is that judicial economy must prevail in this matter.  If plaintiff is allowed to

continue with his complaint, the long-held and invariably considered principles of speediness and

efficiency.  For the reasons set forth above, it is just to dismiss this action or, in the alternative, transfer

it to New York.

Respectfully Submitted,

Ramesh Sarva

Ramesh Sarva
Pro-Se Defendant
43-33 48th Street, Office
Sunnyside, NY 11104

12

# EXHIBIT 3



Ramesh Sarva
43-33 48th Street
Lower Level
Sunnyside, NY 11104
T: 718.268.4895
F: 646.961.4778
E: ramesh@sarva.org

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

APR 2 0 2016

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

RECEIVED
BUT NOT FILED

APR 2 0 2016

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

NICHOLAS L. SAAKVITNE, in
his capacity as Court-Appointed
Plan Administrator

Plaintiff,

v.

RAMESH SARVA, *et al.*,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 8:16-cv-00207
**DECLARATION OF JASON R.
HARRINGTON
IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS OR, in the alternative TRANSFER
VENUE**

Date:        June 17, 2016
Time:       2:30 p.m.
Judge:      Hon. Josephine L. Staton
Courtroom:  10A

I, Jason R. Harrington, Esq., hereby swear and affirm:

1.    I am an attorney licensed in the State of New York and the United States District

Court for the Eastern District of New York.  I have personal knowledge of the facts and

circumstances set forth in this declaration.

2.    I am co-counsel to defendants Ramesh Sarva and Ramesh Sarva CPA, P.C.

("Sarva") in a related matter against Comerica Bank, in its capacity as trustee of the Sea Nine

VEBA Plans ("Comerica"), currently pending in the United States District Court for the Eastern

District of New York ("New York Action"; 15-cv-0219-FB-RER, Ramesh Sarva, individually,

and on behalf of Ramesh Sarva CPA, P.C. v. Comerica Bank, in its capacity as trustee of the Sea Nine VEBA Plans).

3.      On February 5, 2016, Plaintiff filed this lawsuit seeking declaratory relief.  This lawsuit was in response to my filing of the January 22, 2016 First Amended Complaint in the New York Action.

4.      On February 29, 2016, Comerica filed a pre-motion letter seeking to dismiss the New York Action on grounds that Sarva failed to join a necessary party, namely Nicholas Saakvitne, as administrator of the Sea Nine VEBA Plans ("Saakvitne").

5.      On March 11, 2016, I proposed to Jeremy Pelphrey, Esq., plaintiff's counsel, that New York Action plaintiffs and Saakvitne enter into a stipulation which would voluntarily join Saakvitne as a necessary party in the New York Action.

6.      At the end of our conversation, Mr. Pelphrey assured me that he would have an answer for me by Monday, March 14, 2016.  He has refused to give me that answer.

7.      Due to the proceedings pending in the New York Action, I filed my opposition to Comerica's February 29, 2016 pre-motion letter.

8.      I have had no contact with Mr. Pelphrey since my initial contact on March 11, 2016.

Executed this 18th day of April 2016 in New York, New York.

Jason R. Harrington, Esq.

# EXHIBIT 4

## SOUTHERN CALIFORNIA MEDICAL PROFESSION ASSOCIATION

## VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION MASTER TRUST

This Trust Agreement is made by and between the Southern California Medical Profession Association (the "Trustor"), a nonprofit association formed under the laws of the State of California and the sponsor of the Southern California Medical Profession Association Voluntary Employees; Beneficiary Association Master Plan (the "Master Plan" or "Plan"), and The Capital Trust Company of Delaware (the "Trustee"), a national banking association.

### WITNESSETH:

WHEREAS, the Trustor has established the Master Plan as a voluntary employees' beneficiary association (the "Association") under section 501(c) (9) of the Internal Revenue Code of 1986, as it may be amended from time to time (the "Code"); and

WHEREAS, under the terms of the Master Plan, funds will from time to time be contributed to the Trustee, which funds as and when received by the Trustee, will constitute a Trust Fund to be held by said Trustee under the Plan for the benefit of the Participants and their Beneficiaries: and

WHEREAS, the Trustor desires the Trustee to hold and administer such funds pursuant to the terms of this Agreement; and

WHEREAS, the Trustor intends that this Trust shall constitute and employee welfare benefit plan under section 3 (1) of the Employee Retirement Income Security Act of 1974, as it may be amended from time to time ("ERISA") and as such is subject to the requirements of Parts 1 and 4 of Subtitle B, Title I of ERISA;

12/23/02

NOW, THEREFORE, the Voluntary Employees' Beneficiary Association Master Trust originally established by the Trustor effective April 1, 1985 and restated May 1, 1996 for the exclusive benefit of the Participating Employers, their Employees and their Beneficiaries, is hereby restated in its entirety effective as of December 27, 2002, and the Trustee hereby accepts the Trust on the following terms:

## Article 1

### NAME OF THE TRUST

1.01 — **Name of the Trust** — This trust shall be entitled Southern California Medical Profession Association Voluntary Employees' Beneficiary Association Master Trust (the "Trust") and shall carry into effect the provisions of the Master Plan adopted by a Participating Employer in conjunction herewith. The Trustee hereby agrees to act as Trustee of the Trust, and to take, hold, invest, reinvest, administer and distribute in accordance with the following provisions, any and all contributions and assets paid or delivered to the Trustee pursuant to the Plan.

1.02 — **Trust Fund** — all of the assets at any time held hereunder by the Trustee are hereinafter referred to collectively as the "Trust Fund." All rights, title and interest in and to the assets of the Trust Fund shall be at all times vested exclusively in the Trustee.

1.03 — **Deposits** — The Trustee shall receive, take and hold any contributions paid to the Trustee in cash or in other property acceptable to the Trustee. All contributions so received together with the income there from and any other increment thereon shall be held and administered by the Trustee pursuant to the terms of this Agreement without distinction between principal and income and without liability for the payment of interest thereon. The Trustee shall not be responsible for the collection of any contribution to the Plan.

(End of Article 1)

2

12/23/02

## ARTICLE 2

## DEFINITIONS

2.01 — Definitions

(a)   "Administrative Service Provider" means the provider of ministerial services appointed by the Committee.

(b)   "Beneficiary" means a person or persons (natural or otherwise) eligible to receive any Benefits which shall be payable under the Plan.

(c)   "Benefits" mean such life and other welfare benefits as may be adopted by the Employer pursuant to the Adoption Agreement attached to the Master Plan and made a part thereof.

(d)   "Broker of Record" means a licensed life insurance agent, broker and/or benefit consultant.

(e)   "Committee" means the Committee, as defined in Article 6 of the Plan, which is authorized to direct investments of the Trust Fund.

(f)   "Contract(s)" means a policy (ies) issued by a legal reserve life insurance company, with or without an insurance element.

(g)   "Fiduciary" or "Fiduciaries" means individuals and institutions under ERISA who are responsible for the operation of the Plan with the duty to act prudently and in the best interest of participants and their beneficiaries. The named fiduciaries under this Plan are the Trustee, the Participating Employer and the members of the Committee.

(h)   "Participating Employee (s)" or "Participants (s)" means any of the following persons who meet the eligibility requirements provided in the Adoption Agreement:

(1)   An actively employed Employee.
(2)   A retired former Employee.
(3)   The proprietor of partner of a partnership which employs the employees if at least 90% of the total Participants on one day of each quarter of the Plan's taxable year consists of employees.

(i)   "Participating Employer (s)" or "Employer" means each Employer which executes an Adoption Agreement adopting the Plan, and any regular associate or affiliate member thereof which elects to participate thereunder by making contributions thereto in accordance with the provisions of Article 7 for the purpose of defraying the cost of providing Benefits under the Plan to its Participating Employees.

(j)   "Plan" means the schedule of Benefits of the kind and type described in Article 3 of the Plan, together with eligibility rules, administrative procedures, specification and conditions relative to the payment and/or provision of such Benefits to Participating Employees and their beneficiaries, all as adopted, determined and established from time to time by the Participating Employer.

(k) "Trust" means the welfare benefit trust created herein, as amended and in effect from time to time, which Trust shall be known as the "California Building Supply, Wholesalers' and Contractors' League Voluntary Employees' Beneficiary Association Master Plan and Trust" together with the Adoption Agreement, to the extent it refers to the Trust or the Trustee. The Trust shall be maintained pursuant to the Plan and Adoption Agreement, and any further agreement between the Trustor and the Trustee, including any amendments to any such agreements.

(l) "Trust Fund" or "Fund" shall mean all cash and assets of whatever kind or nature, together with all earnings thereon, deposited with, and owned, held or otherwise acquired by the Trustee pursuant to the provisions of this Trust Agreement.

(m) "Trustee" shall means, The Capital Trust Company of Delaware, or any successor Trustee or Trustees.

(n) "Trustor" means the Association or the plan sponsor acting on behalf of the Association.

(End of Article 2)

4

12/23/02

## ARTICLE 3

## THE TRUST

3.01 — Establishment of Trust — A trust is hereby established by the Trustor with the Trustee for the purpose of creating a Fund to provide for the payment of death Benefits to Participating Employees (including their designated Beneficiaries)

3.02 — Qualification — This Trust is intended to qualify as a "voluntary employees" beneficiary association" within the meaning of Section 501(c) (9) of the Code. No amendment to the Trust shall be made at any time under which any part of the Trust may be diverted to purposes other than for the exclusive benefit of Participating Employees and their Beneficiaries.  All contributions under, and all assets and earnings of this Trust are solely and irrevocably dedicated to the payment of Benefits of the kind and type described in Section 3.01 to or on behalf of Participating Employees and no part of the net earnings of this Trust shall in any manner whatsoever inure to the benefit of any person other than through the payment of Benefits described in Section 3.01 or the reasonable costs of providing such Benefits.

3.03 — Contracts — This Trust is further intended to fund Benefits by the issuance of group and/or individual life insurance Contracts in accordance with applicable insurance laws. The Trustee, as and when directed by the Committee, acting through the Administrative Service Provider as its authorized representative, shall apply for and take all such steps and acts as may be necessary and proper to secure group and/or individual life insurance Contracts for the sole benefit of Participating Employees pursuant to the duties and powers of the Trustee as enumerated in Article 5 hereof.

(End of Article 3)

12/23/02

## ARTICLE 4

### THE TRUSTEE

4.01 — <u>Acceptance</u> — The Trustee hereby accepts the Trust created and agrees to hold and administer all property and assets received by or tendered to it as Trustee, together with all earnings thereon, solely for the uses and purposes provided for herein and established hereby and in accordance with the terms and subject to the conditions and restrictions set forth herein.

4.02 — <u>Resignation or Removal</u> — The Trustee may be removed by the Trustor at any given time upon one hundred-twenty (120) days' notice in writing given by the Trustor to the Trustee or upon such shorter notice as may be agreed to by the Trustor and the Trustee. The Trustee may resign at any given time upon one hundred-twenty (120) days' notice in writing given to the Trustor, or upon such shorter notice as may be agreed to by the Trustor and the Trustee. Upon such removal, the Trustor shall appoint a successor Trustee, who shall have the same powers and duties as those conferred and imposed upon the Trustee hereunder. Upon acceptance of such appointment by the successor Trustee, the Trustee shall assign, transfer and pay over to such successor Trustee the funds, properties and assets then constituting and compromising the Trust Fund. If no successor Trustee is appointed within a reasonable time following the resignation and removal of the Trustee, the Trustee shall have the right to continue to deposit into the Trust Fund or into any fund under the supervision of a court of competent jurisdiction, any funds received from Participating Employers, and shall have the right to apply to a court of competent jurisdiction for appointment of a successor Trustee at the expense of the Trust.

4.03 — <u>Successor Trustee</u> — Upon request of such successor Trustee, the Trustor and the Trustee shall execute and deliver such instruments of conveyance and do such other things as may reasonably be required for investing and confirming in such successor Trustee all the right, title and interest of the predecessor in and to the Trust Fund.

4.04 — <u>Merger or Consolidation</u> — Any entity holding trust powers into which the Trustee or any successor Trustee may be merged or consolidated, or any such entity resulting from any merger or consolidation to which the Trustee or any successor Trustee may be a party, or any such entity to which all or substantially all of the Trust business of the Trustee or any successor Trustee may be transferred, shall be a successor of such Trustee hereunder without the filing of any instrument of the performance of any other act.

4.05 — <u>Compensation to the Trustee</u> — Compensation shall be paid to the Trustee in such amount and in such a manner as may be agreed upon in writing from time to time by the Trustor and the Trustee. All other reasonable charges of the Trustee, all costs incurred by the Trustee in the performance of its duties hereunder (including legal and employee benefit consulting services rendered to the Trustee) and all taxes of any kind or nature that may be levied or assessed under existing and future laws against the Trust Fund shall be paid out of the Trust Fund and, until paid, shall constitute a lien and a charge upon the Trust Fund.  The Trustee is authorized to withdraw its compensation and expenses from the Trust Fund if they are not paid within a reasonable time after ten days' written notice from the Trustee to the Trustor of its intent to withdraw such compensation and expenses.

(End of Article 4)

6

12/23/02

## ARTICLE 5

## DUTIES AND POWERS OF THE TRUSTEE

5.01 — **Trustee Directions** — The Trustee shall hold in trust, administer, invest, reinvest, and distribute the Trust Fund, together with all earnings thereon and all increments thereto, provided that written direction is communicated by the Administrative Service Provider acting under the authority of the Committee or by a Committee member acting in the absence of the Administrative Service Provider in accordance with the terms of this Master Trust. Any other method of directing the Trustee shall be agreed in writing among the Trustee, the Trustor and the Administrative Services Provider.

5.02 — **Investment of Contributions** — The Trustee shall receive contributions hereunder in the form of monies required to be paid or otherwise tendered to it hereunder and shall hold, invest and reinvest the same in a collective investment fund or proprietary mutual fund such time as the Administrative Service Provider communicates to the Trustee the Employer's selection of Contract(s) to be purchased from a legal reserve life insurance company or companies.

5.03 — **Investment Authority** — The Committee shall have all power over, and responsibility for, the management, disposition and investment of the Trust assets, and the Trustee shall comply with proper written directions of the Committee concerning those assets. The Committee shall not issue directions in violation of the terms of the Plan and Trust or prohibited by the fiduciary responsibility rules of ERISA. Except to any extent required by ERISA, or otherwise provided in this Trust Agreement, the Trustee shall have no duty or responsibility to review, initiate action, or make recommendations regarding Trust assets and shall retain all such assets until directed in writing by the Committee to dispose of them. The Trustee at the written direction of the Committee shall use and apply the assets comprising the Trust Fund for the following purposes:

(a) To invest in insurance company Contracts (upon selection by Participating Employer(s) and any collective investment, and said fund, as it may be amended from time to time is hereby made a part of this Trust and the Plan as if set forth at length herein, and money or property of this Trust may be added to the said fund at any time from time to time and its commingling with money and property of other qualified trusts created by others is hereby specifically authorized; the Trustee or its affiliates shall be entitled to receive compensation for providing administration, advisory or other services directly from the collective investment funds in addition to any Trustee's fees received pursuant to this Trust Agreement;

(b) To invest in any mutual fund.

(c) To make deposits, within the meaning of Section 408(b)(4) of ERISA, with any bank or other financial institution, that the deposit in an interest bearing account or a time certificate of deposit bears a reasonable rate of interest.

(d) To pay or provide for the payment under Contracts and/or otherwise arrange, all as directed by the Committee, for the provision of all Benefits and services to which Participating Employees and their Beneficiaries are entitled pursuant to and in accordance with the terms of the Plan;

(e) To provide for the payment of all reasonable and necessary expenses incurred in enforcing the rights of the Trust and to provide for the administration of the Trust Fund in accordance with directions from the Committee, including the employment of such administrative, legal, expert and clerical assistance, and the purchase or leasing of such facilities, materials, supplies and equipment as the

12/23/02

Trustee, with the consent of the Committee shall deem necessary or appropriate for such purposes;

(f)   To vote in person or by proxy at corporate or other meetings and to participate in consent to any voting trust, reorganization, dissolution, merger or other action affecting any property in its possession, and to make payments in connection therewith;

(g)   To exchange any Contracts or property held by it for other Contracts or property, and partly for cash, and to exercise conversion, subscription, option and similar rights to any Contracts held by it, and to make payments in connection therewith;

(h)   To acquire hold or dispose of property in unregistered form, or in its name without designation of fiduciary capacity, or in the name of its nominee:

(I)   To retain in cash or in non-interest bearing checking, without liability for interest, such portion of the Trust Fund as shall constitute a reasonable reserve for the payment and/or provision of Benefits under the Plan and current operating expenses of the Plan and Trust, and

(j)   To employ such agents and counsel as may be reasonably necessary in protecting the Trust assets and to pay them reasonable compensation from the Trust; to employ any broker-dealer or other agent, including any broker-dealer or other agent affiliated with the Trustee, and to pay such broker-dealer or other agent, at the expense of the Trust, its standard commissions or compensation; to settle, compromise or abandon all claims and demands in favor of or against the Trust;

(k)   To require Participating Employers and other interested persons to furnish such information and such reports as Trustee may require in the performance of its duties hereunder;

5.04 —   Insurance Contracts — The Trustee, upon the selection of the insurance company and Contract by Employer resolution, shall apply for and take all such steps and acts as may be necessary and proper to secure such Contract or Contracts with one or more legal reserve life insurance company or companies on such rating or risk terms as the Employer shall determine for the provision of the Benefits under the Plan and at the written direction of the Committee, shall remit to such insurance company or companies such amounts as may be necessary to pay the premiums thereof. The Trustee shall be the policyholder under any such Insurance Contracts and shall, at the direction of the Committee, exercise any and all rights and perform any and all obligation as policyholder thereunder.

5.05 —   Records and Administration — The Trustee shall keep full and complete records of the administration of the Trust and the Trustor and the Committee may examine such records at any time during business hours. Within ninety (90) days following December 31 of each calendar year during the term hereof and at such other times as the Committee may direct, the Trustee shall prepare and deliver to the Committee and the Administration Service Provider a certified account of the administration of the Trust.

5.06 —   Audit Procedure — If the Committee notifies the Trustee in writing that the account is not approved within sixty (60) days after receipt thereof, an audit thereof shall be made by a public accountant or accountants selected by the Administrative Service Provider. Upon completion of any such audit, any errors in the account shall be corrected. The approval by the Committee of an account or corrected account shall constitute an account stated between the Trustor, the

8

Trustee, the Employer and all Participating Employees and Beneficiaries, and shall be binding as to all matters embraced therein to the same extent as if the account had been settled and allowed in a proceeding before a court of competent jurisdiction. The expense of any such accounting or audit shall be deemed an expense of administering the Trust. If, within ninety (90) days after the delivery to Committee and the Administrative Service Provider of any such account or corrected account made otherwise than as a result of an audit, the Committee has not notified the Trustee in writing of its disapproval of any such account or corrected account, such account shall constitute an account stated between the Committee and the Trustee as to all matters embraced therein with the same force and effect as through such account or connected account has been duly approved in writing by the Committee.

5.07 —   Delegation of Responsibility — The Trustee shall have the authority to delegate from time to time by any instrument in writing all or any part of its duties, obligations responsibilities hereunder and in the same manner to revoke such delegation of responsibility. Any action of such person in exercise of such delegated responsibilities shall have the same force and effect for all purposes hereunder as if such action had been taken by the Trustee.

5.08 —   Bonding — To the extent required by law, the Trustee shall execute a bond to secure the full and faithful performance by it of its duties and obligations as Trustee hereunder, and shall also bond, or shall cause be bonded, any other person authorized to handle the monies of the Trust Fund or to whom any or all of the Trustee's duties, obligations and responsibilities hereunder may be delegated. Such bonds shall at all times conform to any and all applicable requirements of state and federal law.

5.09 —   Liability — The Trustee shall be liable for the safeguarding and administration of the Trust Fund only in accordance with the provision of this Trust Agreement, and any amendments or supplements thereto, and in accordance with the provisions of Part 4 of Title 1 of ERISA, and no other or further duties or responsibilities shall be implied. The Trustee shall not be responsible for the adequacy of the Trust Fund to meet any payments required under the Plan.

5.10 —   No Liability for Directions — The Trustee shall not be under any liability in taking any action at the direction of the Committee or its agents or members. The Trustee shall be fully protected in relying on any such direction from a person purporting to be acting on behalf of the committee without further inquiry by the Trustee.  The Trustee may consult with qualified counsel (who may be the counsel of the Trustor) selected by the Trustee and, except as otherwise provided in Section 410 of ERISA, the Trustee shall not be liable to any person or to the Trustor for any action taken or omitted to be taken in good faith in accordance with the opinion of said counsel.

5.11 —   No Liability for Action of Insurers — The Trustee shall not be under any liability or responsibility for the failure to effect any of the objects of the Plan and Trust Agreement by reason of the failure on the part of the Employer to make, or direct the making of, application to an Insurer for a Contract or Contracts on the life of a Participating Employee or by reason of the refusal of any Insurer to take any action requested by the Trustee or to issue any Contract or change any Contract as requested by the Trustee.

5.12 —   Acts or Omissions — The Trustee shall not be liable for any act or omission which causes any loss arising from the depreciation, diminution or shrinkage in value of the Trust Fund unless such loss is occasioned by its own negligence or breach of fiduciary duty under ERISA.

9                                           12/23/02

5.13 — <u>Wire Transfers</u>.—The Trustee shall follow the Committee's wire transfer instructions in compliance with the security procedures promulgated by the Trustee and agreed to by the Trustor or the Committee. The Trustee shall perform a telephonic verification to the Employer, Committee or Administrative Service Provider or such other security procedure as the Trustee may require prior to wiring funds or following facsimile directions. The Trustor assumes all risk of delay of transfer if the Trustee is unable to reach the Committee or its authorized representative, or in the event of delay as a result of attempts to comply with any security procedure selected by the Committee or Trustor, as applicable.

5.14 — <u>Indemnification</u> — The Trustee shall not be liable for, and the Trustor agrees to indemnify and hold harmless the Trustee, its officers, directors, employees and agents from and against any loss or liability, claims, demands, damages and expenses (including reasonable attorneys' fees and costs incurred by the Trustee), any claims of breach of fiduciary duty brought by any person or entity, or lawsuits disputes of any kind, and any taxes or penalties incurred by the Trustee, which may arise from (i) any acts taken in accordance with directions (or any failure to act in the absence of such directions) from the Trustor, Committee, Administrative Service Provider or any other person designated to act on their behalf which the Trustee reasonably believes to have been given by them; (ii) the negligence or willful misconduct of the Trustor, Committee, Administrative Service Provider or any other person designated to act on their behalf which results in loss to the Trust, except in the event of the Trustee's negligence or material breach of this Agreement which directly relates to and causes the loss to the Trust. This indemnification shall survive termination of this Trust Agreement and shall apply to the parties' successors and assigns.

(End of Article 5)

12/23/02

**ARTICLE 6**
**COMMITTEE UNDER THE TRUST**

6.01 — Exculpation of Liability of the Committee — Except as otherwise required by Section 410 (a) of ERISA, no party, including but without limitation, the Committee, any member thereof, Trustor, Trustee, Participating Employer and Administrative Service Provider, shall be responsible or otherwise liable for any of the following:

(a) The validity of this Master Trust Agreement;

(b) The form, validity, sufficiency or effect of any Contract or policy for the payment and/or provision of Benefits under the Plan which may be entered into or purchased. The Trustee may rely upon the most recently filed IRS determination letter or other similar notice and be fully protected in such reliance;

(c) The act of any person or persons which may cause the termination, recession or other invalidity of any such Contract or policy for the payment and/or provision of Benefits under the Plan;

(d) The inability of the Trust Fund or of any person with whom the Committee or the Trustee may contract for the payment and/or provision of Benefits under the Plan, or the insufficiency of the assets of either, to pay, provide or otherwise furnish any Benefits provided for under the Plan.

(e)

6.02 — Liability for Acts or Omissions — The Committee, Trustor, Trustee, Participating Employer and Administrative Service Provider (the "Parties") shall not be liable or otherwise responsible for any acts or omissions of any person, firm, or corporation with whom they contract for the payment and/or provision of any Benefits under the Plan and shall not incur any individual or collective responsibility, liability or obligation for any act or omission of any agent, independent contractor, or attorney (the "Others"). In addition, Others employed by the Parties or Others to whom the Parties or Others delegate all of any of their duties, obligations, responsibilities or powers hereunder will be responsible for their own acts or omissions including, but not limited to, willful misconduct and/or gross negligence involving the payment and/or provision of any benefits under the Master Plan. The Committee and Administrative Service Provider shall be entitled to rely on the correctness of all reports and information supplied to them by Participating Employers, Participating Employees, the Trustee, and or any other person, firm or corporation to whom they or any of them delegate all of any of their duties, obligations, responsibilities or powers hereunder.

6.03 — Employment of Counsel and Services — The Committee shall have the authority (a) to delegate its responsibilities under the Plan, and (b) to employ any one or more persons, firms or corporation (including actuaries, attorneys, accountants and consultants) to advise it with respect to any of its responsibilities and duties under the Plan, or to perform any of its responsibilities under the plan, and is authorized to charge Participating Employers for the reasonable fees thereof. Notwithstanding the foregoing provisions of this Section, neither the Committee nor any Fiduciary hereunder may delegate the responsibility to control or manage the assets of the Plan to any person, firm or corporation other than to the Trustee upon its written consent. Any delegation of responsibility under this Section shall be made by written instrument clearly setting forth the responsibilities so delegated and the fees, if any to be charged and shall provide a procedure for terminating such delegation within a reasonable period of time in the event the Committee determines that such delegation is no longer in the interest of the Master Plan and its Participating Employees. The Committee or the Trustor is the named fiduciary

11                                                  12/23/02

for purposes of delegating allowable authority under the Trust to Others.

(End of Article 6)

## ARTICLE 7

### CONTRIBUTIONS AND PAYMENTS FROM THE TRUST

7.01 —   <u>Contributions</u> — Each Participating Employer agrees to make such contributions to the Trust Fund as may be required by the Committee to provide benefits under the Plan for such Participating Employer's Participating Employees.

7.02 —   <u>Liability</u> — Neither the Trustor, the Trustee nor any Participating Employees shall be responsible for the contributions required of any Participating Employer other than themselves.

7.03 —   <u>Benefit Distributions</u> —

(a) The Trustee shall, except as otherwise provided below, pay all amounts payable hereunder only to, or for the benefit of, the person or persons designated under the Plan or deposit to such checking or savings account of the Participating Employees or their Beneficiaries as directed by the Committee or its authorized representative, and only to the extent of assets held in the Trustee for the benefit of the Participating Employees and their Beneficiaries. The Committee's instructions to the Trustee to make distributions or other disbursements or not to make distributions or other disbursements, and the amount thereof, shall be conclusive on all parties, including but not limited to Participating Employees and their Beneficiaries.

(b) In the event any controversy shall arise as to the person or persons to whom any or disbursements of payment is to be made by the Trustee, or as to any other matter arising in the administration of the Plan or Trust, the Trustee may retain the amount in controversy pending resolution of the controversy or the Trustee may file an action seeking declaratory relief and/or may interplead the assets of the Trust Fund in issue, and name as necessary parties the Trustor, Committee, Employer and/or any or all persons making conflicting demands. The expenses of the Trustee for taking any action hereunder shall be an administrative expense of the Trust.

7.04 —   <u>Disbursements on Withdrawal of Participating Employer</u> — When an Employer's participation in the Plan and/or its related Trust is withdrawn or terminated, or if the Plan and/or Trust is terminated by the Association, the Trustee shall disburse payments to those Participating Employees of the Participating Employer(s) affected by such termination or withdrawal at the written direction of the Committee.

(End of Article 7)

12                                12/23/02

## ARTICLE 8

## DURATION, AMENDMENT AND TERMINATION

8.01 —    Date and Duration — This amended and restated Trust Agreement shall be effective as of December 27, 2002, and shall continue until twenty-one (21) years after the death of the last Participating Employee who was a Participant hereunder at the date of the creation hereof unless sooner terminated as provided herein.

8.02 —    Amendments — Subject to the provisions of Section 3.02, the parties hereto may at any time or times, and without the prior consent of Participating Employers, Participating Employees, Beneficiaries, or any other persons, amend or modify the Trust Agreement to any extent and in any manner they may deem necessary and advisable by delivering to Committee a written notification of such amendment. Upon delivery of such written notification to the Committee, the Trust shall be deemed to be amended in the manner and the date set forth in such notification. All persons having any interest in the Plan or the Trust Fund shall be bound thereby. To the extent required by law, or as determined by the Committee, copies of any such amendment shall thereupon be delivered by the Administrative Service Provider to each Participating Employer for circulation among its Participating Employees.

8.03 —    Termination — Upon termination of this Trust, whether upon expiration of the term hereof, termination by the Trustor or as otherwise provided for by the law, the Trustee shall thereupon use and apply the Trust Fund for the payment of all obligations of the Trust. Any remaining funds shall be used and applied by the Trustee, as directed by the Trustor, to provide additional Benefits of the kind and type described in Section 3.01 above to the Participating Employees then participating hereunder or for such other similar or related purpose as shall not adversely affect the Trust's tax exempt status under applicable state or federal law.

(End of Article 8)

13            12/23/02

# ARTICLE 9

## MISCELLANEOUS

9.01 — Contract Ownership — Title to the Trust Fund shall be vested in and remain exclusively in the Trustee, and neither the Trustor, the Committee, any Participating Employer, nor any Participating Employee or any Beneficiary (ies) shall have the right, title or interest therein or thereto or to any contributions made hereunder.

9.02 — Prohibition Against Diversion of Funds — Neither a Participating Employee nor a Beneficiary(ies) shall have the option to receive any part of the Trust Fund in lieu of the Benefits provided under the Plan.

9.03 — Assignment — Under this Trust subject to Parts 1 and 4 of Subtitle B, Title 1 of ERISA, neither a Participating Employee nor such Participating Employee's Beneficiary (ies) shall have the right to assign such Participating Employee's coverage, or the Benefits to which such Participating Employee's Beneficiary (ies) may be entitled under the Plan or this Trust or to transfer, sell, encumber or otherwise dispose of the same either upon the termination of this Trust or otherwise and no part of the contribution hereto or of the Trust Fund shall be subject to the claim of the creditors of any Participating Employee or Beneficiary (ies).

9.04 — Liability of the Trustor to Participating Employees- Anything in this Trust to the contrary notwithstanding, the Trustor shall not have any liability nor incur any obligation to any Participating Employee, or any person by reason of any action taken or by reason of failure to take any action in accordance with or under the terms of the Trust. Neither the Trustor nor any Participating Employers shall be obligated to provide any of the Benefits under the Plan provided by the Trust Fund. Any obligation for such Benefits shall be determined solely by the terms of the Plan which sets forth the Benefits forming a part of the Trust Fund.

9.05 — Responsibility of the Insurer or Provider of Services — No Insurer or provider of services, shall, for any purpose, be deemed a party to the Trust or be responsible for its validity or sufficiency. The obligation of the Insurer shall be measured and determined solely by the terms and conditions of the Contract or Contracts in may issue; and the obligation of a provider of services shall be measured and determined solely by the terms and conditions of the Contracts or Contracts in may issue; and the obligation of a provider of services shall be measured and determined solely by the terms and conditions of the contract to provide such services.

9.06 — Application for Benefits — If any application for Benefits is denied in whole or in part, the Committee, within a reasonable time after receipt of the application (based upon the Committee customary procedures in the processing such claims) shall notify the applicant, advising the applicant of the applicant's right to review, and set forth, in a manner calculated to be understood by the applicant, specific reason for such denial including specific references to the Plan provisions on which the denial is based, a description of any additional information or material necessary for the applicant to perfect the application, the necessity of such material and an explanation of the Plan's review procedure under Section 5.06 (e).

9.07 — Fiduciary Responsibility — Anything herein contained to the contrary notwithstanding, each Fiduciary with respect to the plan shall discharge the responsibility hereunder with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims, and by diversifying the investments of the Plan as to

minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so.

9.08 — Third Persons — No person dealing with the Trustee in relationship to this Trust shall be obligated to see to the application of any money or property or to see that the terms of this Trust have been complied with or be obligated to inquire into the necessity or expediency of any act of the Trustee, and every instrument by the Trustee shall be conclusive in favor of every person relying thereon that: (1) at the time of delivery of said instrument the Trust thereby created was in full force and effect; (2) said instrument was issued in accordance with the terms and conditions contained in this Trust Agreement; and (3) the Trustee was duly authorized and empowered to execute such instrument. The receipt given by the Trustee for any monies or other properties received by it shall effectively discharge the person or persons paying or transferring the same and such person or persons shall not be bound to see the application or be answerable for the loss or misapplication thereof.

9.09 — Third Party Identification — The Trustee shall not be required to determine or to make any investigation to determine the identity or mailing address of any person entitled to any Benefits under the Plan, and shall have discharged its obligation in that respect when it shall have sent checks and other papers via a method which provides a receipt to such persons at their respective addresses as are furnished to it by the Committee.

9.10 — Evidence of Authority — When ever in the administration of this Trust, the Trustee shall deem it necessary or desirable that a matter be proved or established prior to taking, or omitting any action hereunder, said matter may be deemed to be conclusive, proved and established by a certificate in writing if signed by the duly appointed members of the Committee or the appointed secretary for the Committee. In its discretion, the Trustee may, in lieu of any such certificate, accept other evidence of the fact or matter or may require such further or additional evidence as may be reasonable.

9.11 — Right to Employment — Participation hereunder shall not be deemed to be the cause for, an inducement to, or a condition of the employment of any Participating Employee. Nothing contained in the Plan or this Trust Agreement shall be deemed to give any Participating Employee the right to, or the continuation of, any given rate of compensation.

9.12 — Third Party Rights — Neither the creation of this Trust, the establishment of the Plan, nor the creation of the Trust Fund shall be construed to give any Participating Employee or any other person any legal right against the Trustor, the Committee, the Trustee or any Participating Employer except as otherwise expressly provided for herein.

9.13 — Adequacy of the Trust Fund — Any Benefits payable pursuant to the terms of the Master Plan shall be paid from the Trust Fund, and neither the Trustor, the Committee nor the Trustee assumes any liability or responsibility for the adequacy thereof.

9.14 — Qualified Trust — The Master Trust, which includes the Master Plan is intended to continue to qualify and to be tax exempt under Section 501(c)(9) of the Code. Until advised otherwise in writing, the Trustee may conclusively presume that this Trust is qualified under Section 501(c)(9) of the Code, and that this Trust is exempt from federal income taxes. The Trustee shall consider the Trust to be a non-qualified employee welfare benefit trust if the Internal Revenue Service determines that the Trust no longer qualifies for the exemption from federal income taxes under Section 501(c)(9) of the Code.

9.15 — **Receipt and Release for Payments** — A payment less any application expenses, if any, to any Participating Employee's legal representative or Beneficiary (ies) shall to the extent thereof be in full satisfaction of all claims hereunder against the Trustee and the Participating Employer, either of whom may require such Participating Employee's legal representative of Beneficiary (ies) to execute a receipt and release thereof in such form as shall be determined by the Trustee.

9.16 — **Counterpart** — This Master Trust may be executed in an original and any number of counterparts, each of which shall be deemed to be an original of one and the same instrument.

9.17 — **Gender and Number** — Words used in the masculine shall apply to the feminine where applicable, and when the context requires, the plural shall read as the singular and the singular as the plural.

9.18 — **Heading** — Headings in the Trust Agreement are inserted for convenience of reference only and any conflict between such headings and the text shall be resolved in favor of the text.

9.19 — **The Plan** — This Master Trust and the Master Plan are both parts of a single, integrated employee benefit system and shall be construed together. In the event of any conflict between the terms of this Master Trust and of the Master Plan with respect to the rights and duties of the Trustee, such conflict shall be resolved in favor of this Master Trust.

9.20 — **Applicable Law** — This Master Trust is created and accepted in the State of Delaware and shall be administered under the laws thereof, and all questions concerning the interpretation or legality of this Trust shall be determined in accordance with the laws of the State of Delaware unless otherwise preempted by applicable federal law.

9.21 — **Situs** — The situs of this Master Trust will be the State of Delaware.

9.22 — **Marketing Materials** — The Trustee shall have full editorial authority and right of final approval of any and all marketing materials for the Master Plan and Trust with respect to the use of the Trustee's name and description of its services in such marketing materials. The Trustor, Participating Employer, Committee, Administrative Service Provider of any person or entity responsible for producing such marketing materials shall deliver such materials in draft or galley form to ensure that the Trustee is the last entity to approve such materials before they are printed in final form.

(End of Article 9)

16

IN WITNESS WHEREOF, on the _____ 20 _____ day of _____ December _____, 2004 the parties hereto have executed this Master Trust Agreement, originally created on April 1, 1985, restated May 1, 1996, and restated in its entirety as of December 27, 2002. The Trustee has accepted the Master Trust herein created and agrees to be bound hereby.

TRUSTOR:

SOUTHERN CALIFORNIA MEDICAL PROFESSION ASSOCIATION

By: _Sylvia Calhoun – Ross_

Its: _____

TRUSTEE:

THE CAPITAL TRUST COMPANY OF DELAWARE

By: _Dawn M. McGill_

Its: _AVP_

By: _____

Its: _____

ADMINISTRATIVE SERVICE PROVIDER, solely in acknowledgement of its ministerial responsibility to communicate Committee directions to the Trustee:

SEA NINE ASSOCIATES

By: _____
    Kenneth A. Elliott
    Its Manager

17                                                    12/23/02

# EXHIBIT 5

1
2
3
4
5
6
7
8             **UNITED STATES DISTRICT COURT**
9             **CENTRAL DISTRICT OF CALIFORNIA**
10
11
12   COMERICA BANK,                          Case No. SACV 14-186-JLS (JPRx)
13            Plaintiff - Petitioner,        **ORDER OF APPOINTMENT OF**
                                             **PLAN ADMINISTRATOR**
14        vs.
15   SEA NINE ASSOCIATES, INC., *et al*.
16            Defendants - Respondents.
17
18
19
20
21
22
23
24
25
26
27
28

1      Pursuant to the Order Granting Plaintiff-Petitioner's Ex Parte Application to

2  Shorten Notice Period and Set Special Hearing and Granting Plaintiff-Petitioner's

3  Motion to Appoint a Plan Administrator entered in this action on November 18,

4  2014 (Doc. 57), **IT IS ORDERED THAT**:

5      1.      Nicholas L. Saakvitne ("Saakvitne") is hereby appointed as the Plan

6  Administrator to administer each of the following defendant-respondent Voluntary

7  Employees' Beneficiary Association ("VEBA") benefit plans, that previously were

8  administered by Sea Nine Associates, Inc. ("Sea Nine") through its manager and

9  agent Kenneth Elliott:

10     •     Southern California Manufacturers' and Agricultural Producers'

11           League Voluntary Employees' Beneficiary Association Master Plan;

12     •     Southern California Entertainment and Communication Guild

13           Voluntary Employees' Beneficiary Association Master Plan;

14     •     Southern California Medical Profession Association Voluntary

15           Employees' Beneficiary Association Master Plan;

16     •     Southern California Retail Merchants' League Voluntary Employees'

17           Beneficiary Association Master Plan;

18     •     California Building Supply, Wholesalers' and Contractors' League

19           Voluntary Employees' Beneficiary Association Master Plan; and

20     •     Southern California Consultants' and Financial Planners' Profession

21           Association Voluntary Employees' Beneficiary Association Master

22           Plan.

23  (Collectively referred to herein as the "Sea Nine Plans").

24     2.      Saakvitne shall have and shall exercise full authority and control with

25  respect to management or disposition of the assets of the Sea Nine Plans, and shall

26  have all powers, duties, rights, and responsibilities conferred upon the Plan

27  Administrator in the operative plan documents, and as otherwise necessary to

28  effectuate the best interests of the Sea Nine Plans and their participants and

1   beneficiaries.   Saakvitne's powers include, but are not limited to, discretionary
2   authority, control and responsibility over the administration of the Sea Nine Plans,
3   the management and disposition of the assets of the Sea Nine Plans, the evaluation
4   of the continued viability of the Sea Nine Plans, and the direction of the Directed
5   Trustee, Comerica Bank.  Saakvitne may hire an independent administrator, Marita
6   Sanchez, to assist in the transition of fiduciaries and the ongoing administration of
7   the Sea Nine Plans if he deems it in the best interests of the Sea Nine Plans to do so,
8   provided that Ms. Sanchez must supply detailed hourly time records.   Saakvitne
9   may also hire actuaries, accountants and counsel as Saakvitne deems necessary to
10  assist with the transition of fiduciaries, to evaluate a potential wind down, to ensure
11  the Sea Nine Plans' conformity with applicable laws and regulations, and as
12  otherwise necessary to fulfill his obligations under this Order.

13        3.     Saakvitne shall, within 30 days of the entry of this Order, lodge with
14  the Court proof of fiduciary insurance in the amount of $3,000,000.  The cost for
15  such insurance shall be borne by Saakvitne and not the Sea Nine Plans.

16        4.     Saakvitne is ordered to secure forthwith the papers, documents, files
17  and things relative to the Sea Nine Plans, including but not limited to all Sea Nine
18  Plan documents, files, and computer records currently or previously located at the
19  offices of Kenneth Elliott, Sea Nine, Ramesh Sarva, Sylvia Calhoun, and Mr.
20  Sarva's accounting firm, Ramesh Sarva CPA, (collectively, "Record Holders").
21  The Record Holders shall allow the Saakvitne and his agents or designees access to
22  the Record Holders' premises during regular business hours, shall actively
23  cooperate in identifying and providing papers, documents, files and things relative
24  to the Sea Nine Plans, and shall allow Saakvitne to remove those original papers,
25  original documents, original files and things relative to the Sea Nine Plans, subject
26  to the Record Holders' right to make copies of the same.  Saakvitne is further
27  empowered to copy computer data from the computers or other data storage and
28  retrieval systems from the Record Holders.  To the extent Saakvitne collects, either

inadvertently or because it is unavoidable, information, computer files or data unrelated to the Sea Nine Plans, he is ordered to maintain the confidentiality of such files and data, and to return such information if reasonably possible.

5.   Notwithstanding the injunctions previously entered by this Court, Kenneth Elliott, Sea Nine, Ramesh Sarva, and Sylvia Calhoun are authorized to communicate directly with Saakvitne and his designees for purposes of providing information and documentation about the Sea Nine Plans to assist Saakvitne in fulfilling his obligations under this Order.

6.   Within five (5) business days of the entry of this Order, Kenneth Elliott and Sea Nine are ordered to provide Saakvitne with the name, account number, and location of any accounts containing plan assets – including but not limited to cash, investments, insurance policies, and annuities – and to identify and provide the location and deeds, if applicable, of all real or personal property purchased with plan assets.

7.   Any insurance company which has issued policies or insurance contracts in connection with the Sea Nine Plans is ordered to comply with any requests for documents, files or other information by Saakvitne and/or by Comerica Bank in its capacity as the Directed Trustee of the Sea Nine Plans.  Comerica Bank is ordered to serve this Order on those insurance companies.

8.   Comerica Bank is further ordered to provide notice of this Order to the participating employers in the Sea Nine Plans, and is ordered to serve a copy of this Order on the Department of Labor.

9.   Saakvitne may charge as fees his standard hourly billing rate, which is currently $459 dollars per hour, plus reimbursement of out-of-pocket costs, for his services.   The reasonable fees and expenses of professionals and third-party providers which Saakvitne hires or employs shall be paid from the Sea Nine Plans by Comerica Bank, in its capacity as Directed Trustee, at the direction of Saakvitne and pursuant to Saakvitne's discretion.   In connection with Saakvitne's fees and

1    expenses, Comerica Bank shall provide a $20,000 advance immediately upon the

2    entry of this Order. Saakvitne shall provide hourly time records on a monthly basis

3    to Comerica Bank. Saakvitne shall file a noticed motion, for hearing no later than

4    May 8, 2015, in which Saakvitne shall: (1) seek Court approval of Saakvitne's

5    reasonable fees and expenses through March 31, 2015; (2) attach Saakvitne's

6    precise hourly time records for that time period; (3) set forth all fees and expenses

7    of professionals or third-party providers paid at the direction of Saakvitne during

8    that time period; and (4) propose the amount of a reasonable advance and budget

9    for the administrative fees necessary to accomplish any proposed plan amendments

10   or restatements, to carry out an exit strategy or wind down, or to proceed with

11   continued plan operations.

12          10.    Saakvitne and the parties to this action may at any time apply to this

13   Court for further or other instructions or orders and for further powers necessary to

14   enable Saakvitne to properly perform his duties.

15          11.    Saakvitne shall not be held responsible for any claims against the Sea

16   Nine Plans, the Directed Trustee, the prior plan administrators or the related entities

17   which existed, arose, matured, or vested prior to his appointment.

18          12.    A further status conference in this matter shall be held on **January 9,**

19   **2015, at 2:30 p.m.**, at which time Saakvitne shall report to the Court his progress

20   with respect to the transition of fiduciaries, collection of records, and administration

21   of the Sea Nine Plans.

22

23

24

25   Dated: November 24, 2014

26                                         _____
                                                HON. JOSEPHINE L. STATON
27                                              UNITED STATES DISTRICT JUDGE

28